PAUL A. BONIN, Judge.
|,Keith Jenkins, a prisoner serving a life sentence at Angola State Penitentiary, timely filed an application for post-conviction relief. In that application, he raised the claim of ineffective assistance of trial counsel and alleged five distinct instances in which his counsel’s representation was both deficient and prejudicial. The district judge, who also presided over Mr. Jenkins’ trial, dismissed his application without .requiring the district attorney to file an answer and held that Mr. Jenkins had failed to provide sufficient evidence to support the allegations raised.
Mr. Jenkins then timely sought our supervisory review. The district attorney filed an opposition to this application. Having closely examined[1] the allegations set forth ■ by Mr. Jenkins regarding his trial counsel’s performance, we grant his application for supervisory review. But, after our de novo review of the application for post-conviction relief, we agree with the district judge that Mr. Jenkins is not entitled to any relief because his application fails to substantiate any |2claim that would entitle the petitioner to such relief. We thus affirm the district judge’s denial of Mr. Jenkins’ application for post-conviction relief.
We explain our decision in greater detail below.
I
We begin with a brief summary of the proceedings which concluded in Mr. Jenkins’ convictions and sentences.
Mr. Jenkins was charged- in a single bill of information with one count of possession with the intent to distribute. cocaine and one count of possession of a firearm by a convicted felon. No motion to sever those counts for trial was ever filed, and this forms the basis for Mr. Jenkins’ first allegation against his counsel.
Just before commencement of trial and in the presence of Mr. Jenkins, trial counsel stated on the record that the district attorney had offered a plea bargain to Mr. Jenkins which would result in a sentence of ten years imprisonment with a stipulation that habitual offender proceedings would not be instituted. Because Mr. Jenkins had been convicted of possession of cocaine on three prior occasions, if convicted as charged, Mr. Jenkins faced a sentencing range of imprisonment for not less *32 than thirty years, nor more than the remainder of his natural life, without the benefit of probation, parole, or suspension of sentence. See La. R.S. 40:967 B(4)(b); La. R.S. 15:529.1 A(4)(a). Trial. counsel also stated on the record that Mr. Jenkins had rejected that offer; this relates to Mr. Jenkins’ second allegation against trial counsel.[1]
| ¡¡During trial, police officers testified that Mr. Jenkins, while standing in front of an abandoned home, was approached by and had a brief conversation with someone in a red vehicle. Mr. Jenkins then walked into and back out of an alley alongside that abandoned home, handed an unknown object to the driver, and received an unknown amount of currency in return. The red car then drove away and was not thereafter stopped by police. Next, according to police testimony, Mr. Jenkins returned to that alley and re-emerged holding his waistband and acting nervously. According to the police, Mr. Jenkins entered a silver car containing at least two other occupants that approached shortly thereafter.
The police then effectuated a stop on that silver car, and, according to police testimony, Mr. Jenkins fled, running into an empty lot filled with knee-high grass and debris, where he was observed discarding a gun and a white object. Following Mr. Jenkins’capture, the officers then located the gun and the white object, which later field-tested positive as cocaine. The substance was also identified at trial as cocaine after laboratory testing. A police fingerprint expert further identified Mr. Jenkins as having been previously convicted of a felony — possession of cocaine — in 2000. No fingerprint or other laboratory testing was requested by trial counsel, and this relates to Mr. Jenkins’ third and fourth allegations against counsel.
Mr. Jenkins testified at trial in his own defense. He explained that he was in that area to check on his mother’s house and that he was in the silver car with three other people, two of whom, Mr. Jenkins claims, were present in court on the day of his trial. He testified that he did not run from the police and denied possessing a gun or drugs. No witnesses, however, were called by trial counsel to corroborate Mr. Jenkins’ testimony, and this relates to his fifth allegation against his trial counsel.
I/The jury found Mr. Jenkins guilty as charged of being a convicted felon in possession of a firearm and returned a responsive verdict of guilty of attempted possession with the intent to distribute cocaine. The trial judge sentenced Mr. Jenkins to a fifteen-year term of imprisonment for possession of a firearm by a convicted felon. With respect to the conviction for attempted possession with the intent to distribute cocaine, the district attorney instituted habitual offender proceedings, charging Mr. Jenkins as a fourth-felony offender. The sentencing judge adjudicated Mr. Jenkins to be a fourth-felony offender and, after explaining his decision, sentenced Mr. Jenkins to life imprisonment without the benefit of probation, parole, or suspension of sentence.[2]
*33 Mr. Jenkins appealed, and we affirmed his sentences and convictions. See State v. Jenkins, 09-1665 (La.App. 4 Cir. 7/21/10), 39 So.3d 859, writ denied 10-1926 (La.2/18/11), 57 So.3d 330. On May 3, 2012, Mr. Jenkins timely filed his application for post-conviction relief in the district court. See La.C.Cr.P. art. 930.8 A (setting out the general rule that no application for post-conviction relief will be considered “if it is filed more than two years after the judgment of conviction and sentence has become final under the provisions of Article 914 or 922 ...”); La.C.Cr.P. art. 922 D (“If an application for a writ of review is timely filed with the supreme court, the judgment of the appellate court from which the writ of review is sought becomes final when the supreme court denies the writ.”); La.C.Cr.P. art. 914 B.[3]
_|¿n
Because Mr. Jenkins’ application was timely filed, the district judge properly reviewed the merits of the application to determine whether it “alleges a claim which, if established, would entitle the petitioner to relief....” La.C.Cr. P. art. 927 A. And, if an application does allege such a claim, the district judge shall order the district attorney “to file any procedural objections he may have, or an answer on the merits if there are no procedural objections .... ” Ibid. But, if the application does not allege such a claim, then the district judge may dismiss the application without requiring an answer to be filed by the district attorney. See La.C.Cr.P. art. 928.
In this Part, we set forth the allegations of fact generally required to establish a claim for ineffective assistance of counsel, which, if proved, would entitle Mr. Jenkins to post-conviction relief.
At the outset we note that Mr. Jenkins has set forth only one ground for relief— the ineffective assistance of his trial counsel — but identifies five instances in which, he claims, his counsel’s performance was prejudicially deficient. Ineffective assistance of counsel at trial is a well-recognized basis for seeking and obtaining post-conviction relief. See State v. Deruise, 98-0541, p. 34 (La.4/3/01), 802 So.2d 1224, 1247-48; State v. Thomas, 12-1410, p. 5 (La.9/4/13), 124 So.3d 1049, 1053. A claim of ineffective assistance of counsel is a proper ground on which to seek post-conviction relief as it asserts that the petitioner’s “conviction was obtained in violation of the constitution of the United States or the state of Louisiana.” La.C.Cr.P. art. 930.3(1). Indeed, this claim is ordinarily raised in an [ (¡application for post-conviction relief rather than on direct appeal because, if sufficiently pleaded, an applicant would then be entitled to an eviden-tiary hearing to develop the facts necessary to prove that claim. See State v. Leger, 05-0011, p. 44 (La.7/10/06), 936 So.2d 108, 142.
The Sixth and Fourteenth Amendments to the U.S. Constitution and Article I, Section 13 of the Louisiana Constitution guarantee a person accused of a crime the right to effective assistance of counsel. See Strickland v. Washington, 466 U.S. 668, 686, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984) (citing McMann v. Richardson, 397 U.S. 759, 771 n. 14, 90 S.Ct. 1441, 25 L.Ed.2d 763 (1970)); State v. Washington, 491 So.2d 1337, 1338-39 (La.1986) (incor *34 porating the Strickland, analysis for claims of ineffective assistance of counsel under La. Const. art. I, § 13). See also Lockhart v. Fretwell, 506 U.S. 364, 368, 113 S.Ct. 838, 122 L.Ed.2d 180 (1993); State v. Reeves, 06-2419, p. 35 (La.5/5/09), 11 So.3d 1031, 1055. This right is “needed ... in order protect the fundamental right to a fair trial,” Strickland, 466 U.S. at 684, 104 S.Ct. 2052, and plays “a crucial role in the adversarial system ... since access to counsel’s skill and knowledge is necessary to accord defendants the ‘ample opportunity to meet the case of the prosecution’ to which they are entitled.” Id. at 685, 104 S.Ct. 2052 (quoting Adams v. United States ex rel. McCann, 317 U.S. 269, 275, 63 S.Ct. 236, 87 L.Ed. 268 (1942)). Effective assistance of counsel is thus “critical to the ability of the adversarial system to produce just results.” Strickland, 466 U.S. at 685, 104 S.Ct. 2052.
“The benchmark for judging any claim of ineffectiveness must be whether counsel’s conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result.” Id. at 686, 104 S.Ct. 2052. Strickland is the touchstone decision which sets forth the two elements of a claim for ineffective assistance of counsel. See id. at 668, 104 S.Ct. 2052; State v. Roe, 13-1434, p. 54 (La.App. 4 Cir. 10/8/14), 151 So.3d 838, 870. Both of these elements are essential |7to establish a pris- • oner’s right to post-conviction relief and, as a result, a new trial. See Strickland, 466 U.S. at 687, 104 S.Ct. 2052; Washington, 491 So.2d at 1338.
First, an applicant must demonstrate that counsel’s performance was deficient and thus made errors so serious that “counsel’s representation fell below an objective standard of reasonableness.” Strickland, 466 U.S. at 688, 104 S.Ct. 2052. Counsel is then no longer functioning as the counsel guaranteed the defendant by the Sixth Amendment. See State v. Small, 13-1334, p. 14 (La.App. 4 Cir. 8/27/14), 147 So.3d 1274, 1284. And, second, an applicant must show that any deficiencies in counsel’s performance prejudiced the defense. See Strickland, 466 U.S. at 692, 104 S.Ct. 2052. “This requires showing that the deficiencies were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.” Id. at 687, 104 S.Ct. 2052.
While it is necessary to allege that the applicant’s counsel’s performance was both deficient and prejudicial, a conclusory allegation is not sufficient to establish an ineffective assistance of counsel claim. See State v. Mark, 13-1110, p. 27 (La.App. 4 Cir. 7/30/14), 146 So.3d 886, 905; State v. Barnes, 12-1283, p. 19 (La.App. 4 Cir. 10/2/13), 126 So.3d 606, 617-18. See also State v. Hernandez, 96-0115, p. 2 (La.App. 4 Cir. 12/18/96), 686 So.2d 92, 94 (commenting that allegations of attorney error may not be vague). A failure to demonstrate either deficiency in performance or prejudice to the defense from that deficiency will defeat a claim of ineffective assistance of counsel. See Strickland, 466 U.S. at 687, 104 S.Ct. 2052. See also La.C.Cr.P. art. 930.2 (noting that the “petitioner in an application for post conviction relief shall have the burden of proving that relief should be granted”). Thus, we need not “address both components of the inquiry if the [petitioner] makes an insufficient showing on one.” Strickland, 466 U.S. at 697, 104 S.Ct. 2052. We elaborate upon each element of an ineffective assistance claim below.
IsA
For counsel’s performance to be deficient, a petitioner “must show that counsel’s representation fell below an objective standard of reasonableness.” Id. at *35 688,104 S.Ct. 2052. In order to substantiate that claim, a petitioner “must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment.” Id. at 690, 104 S.Ct. 2052. See also State v. Sanders, 93-0001, p. 27 (La.11/30/94), 648 So.2d 1272, 1292 (illustrating types of errors or omissions that may qualify as ineffective assistance of counsel). An error, falling within the “ambit of trial strategy,” however, does not establish ineffective assistance of counsel. See State v. Jackson, 05-1281, p. 16 (La.App. 4 Cir. 11/29/06), 947 So.2d 115, 125 n. 14; Small, 13-1334, p. 14, 147 So.3d at 1284.
Review of counsel’s decisions through a uniform checklist or a detailed set of rules “would interfere with the constitutionally protected independence of counsel and restrict the wide latitude counsel must have in making tactical decisions.” Strickland, 466 U.S. at 689, 104 S.Ct. 2052. Reasonableness of counsel’s conduct is instead measured “under prevailing professional norms” and “on the facts of the particular case....” Id. at 688, 690, 104 S.Ct. 2052. See also Wiggins v. Smith, 539 U.S. 510, 521, 123 S.Ct. 2527, 156 L.Ed.2d 471 (2003); Padilla v. Kentucky, 559 U.S. 356, 366, 130 S.Ct. 1473, 176 L.Ed.2d 284 (2010); State v. Woodard, 08-0606, p. 10 (La.5/5/09), 9 So.3d 112, 118 (per curiam).
This review is undertaken by applying the “rule of contemporary assessment,”- Lockhart, 506 U.S. at 372, 113 S.Ct. 838, a “context-dependent consideration of the challenged conduct as seen from counsel’s perspective at the time.” Wiggins, 539 U.S. at 523, 123 S.Ct. 2527 (internal quotations omitted). “[A]s ‘opinions may differ on the advisability of a tactic, hindsight is not the proper perspective for judging the competence of counsel’s trial decisions. Neither may an attorney’s level of ^representation be determined by whether a particular strategy is successful.’ ” State v. Quezada, 13-1318, p. 11 (La.App. 4 Cir. 5/21/14), 141 So.3d 906, 915 (quoting State v. Bordes, 98-0086, p. 8 (LaApp. 4 Cir. 6/16/99), 738 So.2d 143, 147).
“Judicial scrutiny of counsel’s performance must be highly deferential.” Strickland, 466 U.S. at 689, 104 S.Ct. 2052. “The object of an ineffectiveness claim -is not to grade counsel’s performance.” Id. at 697, 104 S.Ct. 2052. We do “ ‘not sit to second-guess strategic and tactical' choices made by trial counsel,’ ” State v. Hoffman, 98-3118, p. 40 (La.4/11/00), 768 So.2d 542, 579 (quoting State v. Myles, 389 So.2d 12, 31 (La.1979)), and “must indulge a strong presumption that counsel’s conduct falls within the wide range of reasonable professional assistance....” Strickland, 466 U.S. at 689, 104 S.Ct. 2052. We grant this deference because “the attorney observed the relevant proceedings, knew of materials outside the record, and interacted with the client, with opposing counsel, and with the judge.” Premo v. Moore, 562 U.S. 115, 122, 131 S.Ct. 733, 178 L.Ed.2d 649 (2011).
B
“An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment.” Strickland, 466 U.S. at 691, 104 S.Ct. 2052; Thomas, 12-1410, p. 5, 124 So.3d at 1053. “It is not enough for the [petitioner] to show that the errors had some conceivable effect on the outcome of the proceeding.” Strickland, 466 U.S. at 693, 104 S.Ct. 2052. Claims “alleging a deficiency in attorney performance are subject to a general requirement that the [petitioner] affirmatively prove prejudice.” Id. at 693, 104 S.Ct. 2052. See also *36 Williams v. Taylor, 529 U.S. 362, 394, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000) (“The petitioner bears the ‘highly demanding’ and ‘heavy burden’ in establishing actual prejudice.”). “The [petitioner] must show that there is a reasonable probability that, but for counsel’s unprofessional |10errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.” Strickland, 466 U.S. at 694, 104 S.Ct. 2052. “[I]t is not the State’s burden to disprove conjectured theories of prejudice.” Thomas, 12-1410, p. 5, 124 So.3d at 1053.
We now turn to address in the following Parts each of the five instances in which Mr. Jenkins claims that his counsel was prejudicially deficient.
Ill
In this Part we examine Mr. Jenkins’ allegations with respect to his trial counsel’s failure to file a motion to sever under La. C.Cr.P. art. 495.1.
During the joint trial on the counts contained in the bill of information (possession with the intent to distribute cocaine and possession of a firearm by a convicted felon), the district attorney was permitted to introduce evidence of Mr. Jenkins’ prior guilty plea to possession of cocaine in order to prove that Mr. Jenkins was, in fact, a convicted felon at the time that he was arrested in possession of a firearm. Mr. Jenkins claims that the introduction of this relevant evidence to the firearm charge highly prejudiced his prosecution for possession with the intent to distribute cocaine because the jury learned that Mr. Jenkins had previously committed crimes involving narcotics. This knowledge, Mr. Jenkins claims, created a mindset with the jurors that Mr. Jenkins had a background in the use and possession of narcotics. Mr. Jenkins thus contends that counsel’s failure to file a motion to sever was deficient representation and that he was prejudiced by this failure because the outcome of his conviction for possession with intent to distribute would have been different.
Generally, only the “failure to pursue meritorious claims and defenses, owing not to strategic considerations but to a misapprehension of controlling law |nor relevant facts ... will be found deficient.” See id., 12-1410, p. 7, 124 So.3d at 1054. Here, Mr. Jenkins’ attorney’s failure to file a motion to sever was not professionally unreasonable. First, such motion would not be meritorious as those offenses were “based on the same act.” See La.C.Cr.P. art..493 (“Two or more offenses may be charged in the same ... information in a separate count for each offense if the offenses charged ... are based on the same act or transaction ... provided that the offenses joined must be triable by the same mode of trial.”). Mr. Jenkins was charged with possessing cocaine and a firearm at the same time and disposing of both while fleeing from police in a vacant lot; Mr. Jenkins charges were thus properly joined in the same bill of information. See, e.g., State v. Galle, 11-0930, p. 19 (La.App. 4 Cir. 2/13/13), 107 So.3d 916, 928-29.
Second, Mr. Jenkins’ defense to the narcotics charge was not sufficiently prejudiced by the joinder of these offenses. See La.C.Cr.P. art. 495.1 (“If it appears that a defendant ... is prejudiced by a joinder of offenses in ... [a] bill of information or by such joinder for trial together, the court may order separate trials, grant a severance of offenses, or provide whatever other relief justice requires.”). Here, Mr. Jenkins must show that the introduction of his prior guilty plea due to counsel’s failure to sever these offenses prejudiced his defense to the narcotics charge to such a degree that “there is a *37 reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt.” Strickland, 466 U.S. at 695, 104 S.Ct. 2052. This requires a court to “consider the totality of the evidence before the judge or jury.” Id.
We have twice found that the joinder of a charge of possession of a firearm by a convicted felon with another offense does not automatically prejudice the defendant to such a degree that facial allegations alone suffice to grant him a new trial. Galle, 11-0930, p. 19, 107 So.3d at 928-29; State v. Lomax, 09-1129, pp. 910 (La.App. 4 Cir. 3/24/10), 35 So.3d 396, 401-02. Nonetheless each case must be examined individually to determine whether the joint trial caused sufficient prejudice to undermine confidence in the outcome. See Strickland, 466 U.S. at 694, 104 S.Ct. 2052.
To determine prejudice under Article 495.1, we review: whether the jury would be confused by the various counts, whether the jury would be able to segregate the various charges and evidence, 'whether the defendant would be confounded in presenting his various defenses, whether the crimes would be used by the jury to infer a criminal disposition, and whether, especially considering the nature of the charges, the charging of several crimes would make the jury hostile. See State v. Washington, 386 So.2d 1368, 1371 (La.1980). A “severance is not required if the facts of each offense are not complex, and there is little likelihood that the jury will be confused by the evidence of more than one crime.” State v. Cooper, 12-0174, p. 11 (La.App. 4 Cir. 7/10/13), 120 So.3d 844, 850.
Mr. Jenkins’ assertions in this matter are conclusory and unsupported by any facts. Nothing has been introduced to show that the jurors were confused by the presentation of the evidence, were unable to segregate the evidence of the two counts, inferred a criminal disposition, or were hostile as a result of the joinder of his charges. Here, the jury displayed an understanding of the nature of the offenses by returning the responsive verdict of attempted possession of cocaine with the intent to distribute. Mr. Jenkins has proven neither that his counsel’s failure to .seek a severance was deficient, nor that the result of his trial with reference to the narcotics charge would have been different if the evidence of his prior guilty plea had not been introduced.
_bIV
We next address Mr. Jenkins’ claim that his counsel provided ineffective assistance in connection with his advice regarding the plea bargain offered by the district attorney.
Mr. Jenkins admits, and the record establishes, that his counsel informed him of the district attorney’s offer of a sentence of ten years imprisonment in conjunction with a promise to refrain from filing a multiple bill to enhance his sentence, if Mr. Jenkins were to plead guilty as charged.[4] Mr. Jenkins also states that he declined to accept the district attorney’s offer and alleges that this course of action was selected “based on counsel’s advice that resulted in [him] going to trial and receiving a life sentence.” But, critically, Mr. Jenkins does not describe the content of his counsel’s “advice” or explain what strategy that counsel suggested that they pursue at trial. As we have already observed, Mr. Jenkins’ defense at trial was his actual innocence of the charges.
“[Defendants have ‘no right to be offered a plea nor a federal right that a *38 judge accept it.’ ” Lafler v. Cooper, — U.S. —, 132 S.Ct. 1376, 1387, 182 L.Ed.2d 398 (2012) (quoting Missouri v. Frye, — U.S. —, 132 S.Ct. 1399, 1403, 182 L.Ed.2d 379 (2012)) (punctuation omitted). If a plea bargain is offered, however, a defendant has the right to effective assistance of counsel in considering whether to accept that offer. See Lafler, 132 S.Ct. at 1387; State v. Scott, 93-0401, p. 1 (La.3/17/95), 651 So.2d 1344, 1344 (per curiam). See also State v. Calhoun, 96-0786, p. 10 (La.5/20/97), 694 So.2d 909, 915 (“[Cjounsel’s role at the guilty plea stage ... [is] absolutely critical in assuring that the defendant is able to weigh his options intelligently.”) (internal quotations omitted). Thus, we 114consider the negotiation of a plea bargain to be a critical phase of litigation for purposes of the right to effective assistance of counsel. See Padilla, 559 U.S. at 373, 130 S.Ct. 1473. See also Lafler, 132 S.Ct. at 1385; State v. Sheppard, 95-0370, pp. 1-2 (La.9/13/96), 679 So.2d 899, 899 (per curiam). And we apply the essential elements of Strickland to determine the merits of an ineffective-assistance-of-counsel claim in the context of a plea bargain offer. State v. West, 09-2810, p. 1 (La.12/10/10), 50 So.3d 148, 149 (per curiam); State v. Turner, 13-0285, p. 2 (La.App. 4 Cir. 12/4/13), 131 So.3d 106, 107-08. We, therefore, review counsel’s conduct for prejudicial deficiency.
Deficiencies in representation dur-. ing the plea bargaining process are often difficult to prove due to the nature of the process. “Bargaining is ... defined to a substantial degree by personal style.” Frye, 132 S.Ct. at 1408. “The art of negotiation is at least as nuanced as the art of trial advocacy, and it presents questions farther removed from immediate judicial supervision.” Premo, 562 U.S. at 125, 131 S.Ct. 733. As a general rule, however, counsel bears a “critical obligation ... to advise the client of ‘the advantages and disadvantages of a plea agreement.’ ” Padilla, 559 U.S. at 364, 130 S.Ct. 1473 (citing Libretti v. United States, 516 U.S. 29, 50-51, 116 S.Ct. 356, 133 L.Ed.2d 271 (1995)). See also Frye, 132 S.Ct. at 1406-07.
To establish prejudice in the context of plea bargaining process, a petitioner “must show the outcome of the plea process would have been different with competent advice.” Lafler, 132 S.Ct. at 1384. Here, “the question is not the fairness or reliability of the trial but the fairness and regularity of the processes that preceded it, which caused the defendant to lose benefits he would have received in the ordinary course but for counsel’s ineffective assistance.” Id. at 1388. A petitioner, claiming that he rejected a plea bargain due to ineffective assistance, | !S“must show that but for the ineffective advice of counsel there is a reasonable probability that the plea offer would have been presented to the court ..., that the court would have accepted its terms, and that the conviction or sentence, or both, under the offer’s terms would have been less severe than under the judgment and sentence that in fact were imposed.”[5] Id. at 1385. See also Glover v. United States, 531 U.S. 198, 203, 121 S.Ct. 696, 148 L.Ed.2d 604 (2001) (“[0]ur jurisprudence suggests that any amount of actual jail time has Sixth Amendment significance.”); Frye, 132 S.Ct. at 1409; Turner, 13-0285, p. 3, 131 So.3d at 108.
*39 Here, Mr. Jenkins makes no such showing; his assertions are again conelu-sory and lacking sufficient factual support. Mr. Jenkins admits that counsel informed him of the district attorney’s offer of a ten-year term of imprisonment with a promise not to file a multiple bill of information to enhance his sentence as a fourth-felony offender. Mr. Jenkins fails to elaborate upon the advice given by trial counsel that caused him to reject that offer and instead proceed to trial. A prisoner must explain what advice was given to him from counsel during the plea bargain process or state that no advice or information regarding the plea bargain was given at all. It is not sufficient that an inmate simply express regret in not accepting the plea bargain.
y
In this Part we review Mr. Jenkins’ claims regarding counsel’s failure to investigate and obtain certain items in support of Mr. Jenkins’ defense, including 911 call recordings and fingerprint evidence, to discredit inconsistent testimonies |1fiof the arresting police officers, and to prepare a motion to exclude an allegedly incomplete lab report. We again apply Strickland to claims of ineffective assistance due to counsel’s failure to investigate and prosecute a given case. See Bell v. Cone, 535 U.S. 685, 697-98, 122 S.Ct. 1843, 152 L.Ed.2d 914 (2002).
We first review whether counsel’s representation was deficient by examining whether a reasonable investigation would have uncovered certain evidence. See State v. Brooks, 94-2438, p. 7 (La.10/16/95), 661 So.2d 1333, 1338. The essence of a criminal defendant’s right to the assistance of counsel is “the opportunity ... to consult with an attorney and to have him investigate the case and prepare a defense for trial.” Michigan v. Harvey, 494 U.S. 344, 348, 110 S.Ct. 1176, 108 L.Ed.2d 293 (1990). Defense counsel has an “obligation to conduct its own investigation and prepare a defense for trial as the State is not obligated under Brady or its progeny to furnish defendant with information he already has or can obtain with reasonable diligence.” State v. Harper, 10-0356, p. 11 (La.11/30/10), 53 So.3d 1263, 1271 (citing State v. Kenner, 05-1052, pp. 1-2 (La.12/16/05), 917 So.2d 1081, 1081-82 (per curiam)).
“Strickland does not require counsel to investigate every conceivable line of mitigating evidence no matter how unlikely the effort would be to assist the defendant_” Wiggins, 539 U.S. at 533, 123 S.Ct. 2527. “[C]ounsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary.” Strickland, 466 U.S. at 691, 104 S.Ct. 2052. And “strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation.” Brooks, 94-2438, p. 9, 661 So.2d at 1338. See also State v. Sparks, 88-0017, p. 65 (La.5/11/11), 68 So.3d 435, 484.
A petitioner must next prove that a reasonable probability exists that, but for counsel’s failure to investigate and prosecute in a certain manner, the result of the proceeding would have been different.See Strickland, 466 U.S. at 694, 104 S.Ct. 2052. This requires the petitioner proving that “there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt” for certain charges. See id. at 695, 104 S.Ct. 2052. This requires a court to “consider the totality of the evidence before the judge or jury.” Id.
To substantiate this claim, a petitioner must present more than conclusory *40 allegations that counsel in hindsight should have pursued a different course of action. A petitioner, claiming that certain evidence should have been introduced or discredited, needs to attach that evidence to his application for the district court’s review. The petitioner bears the burden of proving his claim in post-conviction relief and is given two year to collect evidence regarding his claim following the finality of his conviction. See La.C.Cr.P. arts. 930.2; 930.8; 922. An inmate can obtain certain documents cost-free through motions for production of documents. See State v. Variste, 14-1167 (La.App. 4 Cir. 4/29/15), 165 So.3d 1127.[6]
Mr. Jenkins has failed to prove that his counsel rendered ineffective assistance with respect to any of the instances. First, Mr. Jenkins failed to obtain and prove the existence of the alleged 911 tape recordings or the transcripts of such | ^recordings. Mr. Jenkins is required to produce the contents of these tapes in order to substantiate his claim that his counsel was deficient in failing to obtain them. We cannot determine, nor can Mr. Jenkins prove, that his defense was prejudiced without the content of the tapes as that would be essential to showing a reasonable probability of a different result. Mr. Jenkins has failed to meet his burden of proof.
Second, Mr. Jenkins has not shown that counsel’s failure to obtain fingerprint evidence from the firearm and bag of narcotics prejudiced his defense such that there was a reasonable probability that the result of his trial would be different. In this matter, a police officer’s testimony that he witnessed Mr. Jenkins discard a firearm and a white object while fleeing in a vacant lot was sufficient evidence to prove that Mr. Jenkins was in possession of each object. The presence or lack thereof of Mr. Jenkins’ fingerprints would not create a reasonable probability of a different result in this matter. Mr. Jenkins failed to elaborate any further into how fingerprint analysis would create this reasonable probability. Furthermore, Mr. Jenkins fails to explain why counsel’s decision to not introduce such evidence was outside of the ambit of trial strategy.
Third, Mr. Jenkins did not prove how counsel’s failure to discredit inconsistent police testimony regarding which door Mr. Jenkins exited when fleeing the vehicle was prejudicially deficient. We do not sit to judge counsel’s strategy in hindsight when it is not successful. Furthermore, the details of Mr. Jenkins’ flight from police were not at direct issue in this prosecution; rather his possession of a firearm and narcotics was. Mr. Jenkins has also not attached | ^transcripts of the alleged inconsistent testimony to substantiate his claim that such testimony even existed.
Fourth and finally, Mr. Jenkins has not attached the allegedly incomplete evidentiary report. Therefore, Mr. Jenkins has not proven that the report is incomplete as to weight and substance. Furthermore, Mr. Jenkins has not stated why a motion to suppress would be meritorious. Thus, Mr. Jenkins has failed to show that his counsel’s representation was deficient by failing to file a motion to suppress the evidentiary report. Mr." Jenkins has also not proven that the exclusion of the lab report would have created a reasonable probability that the result of *41 his proceeding would be different. Mr. Jenkins’ own recitation of the facts stated that a field test also confirmed the substance to be cocaine, thus supplying the jury with another source of evidence to determine that Mr. Jenkins was in possession of cocaine.
VI
In this Part we address the claim of ineffective assistance with respect to the failure to interview and call as witnesses certain identified persons to corroborate Mr. Jenkins’ trial testimony. Mr. Jenkins claims that one witness saw the police removing objects from the abandoned house and that two other witnesses were in the silver vehicle with him and would corroborate his version of what occurred that day. Petitioner then requests that he be permitted to supplement his applications with affidavits from these witnesses.
Again, Mr. Jenkins’ allegations are without evidentiary support. A petitioner is required to substantiate his claims for post-conviction relief. See La.C.Cr.P. art. 930.2. Mr. Jenkins did not attach affidavits of the testimony that would have been supplied by these three supposed witnesses, nor did he prove that these witnesses 12pwere even known to counsel prior to and during trial. Mr. Jenkins only states a small portion of what one witness would state. He provides contextual information as to why the testimony of the other two witnesses would be relevant but fails to supply any information as to the content of their respective testimonies.
VII
Having examined each instance of Mr. Jenkins’ ineffeetive-assistance-of-counsel claim, our confidence in the just outcome of his trial has not wavered. In none of the five alleged instances has Mr. Jenkins proven that his counsel’s representation was deficient and that his representation prejudiced Mr. Jenkins’ defense.
DECREE
Having granted the writ of review, we affirm the district judge’s ruling and deny the post-conviction relief requested by Keith Jenkins.
WRIT GRANTED; RULING AFFIRMED

. We have taken the liberty of re-designating the order and structure of Mr. Jenkins' allegations.

. Pope Francis has objected to mandatory life sentences without the possibility of parole and labeled them as "hidden” death sentences because such sentences are designed for the convicted offender to die in the penitentiary albeit not. by execution. See State v. Jones, 14-1118, p. 17 (La.App. 4 Cir. 4/1/15), 165 So.3d 217, 227.

. Mr. Jenkins properly sought our supervisory jurisdiction following the denial of his application by the district court as no appeal lies from such judgment. See La.C.Cr.P. art. 930.6 A. We can dismiss an untimely filed application for post-conviction relief even if the district court addressed the merits of that application. See State v. LeBlanc, 06-0169 (La.9/15/06), 937 So.2d 844 (per curiam).

. Mr. Jenkins had been previously convicted three times for cocaine possession, a felony.

. "It can be assumed that in most jurisdictions prosecutors and judges are familiar with the boundaries of acceptable plea bargains and sentences. So in most instances it should not be difficult to make an objective assessment as to whether or not a particular fact or intervening circumstance would suffice, in the normal course, to cause prosecutorial withdrawal or judicial nonapproval of a plea bargain.” Frye, 132 S.Ct. at 1410.

. We emphasize that a court's production of any of these public documents to a prisoner, or to anyone else, is not restricted when that person pays the reasonable costs' associated • with the production of those documents. See La. R.S. 44:1 et seq. (statutes governing access to public records). See, e.g., State ex rel. Leonard v. State, 96-1889, p. 1 (La.6/13/97), 695 So.2d 1325, 1325 (per curiam).